UNITED STATES of America ex rel.
Frank FITZPATRICK, Plaintiff,

v.

UNITED STATES PAROLE COMMIS-
SION et al., Defendants.

Civ. No. 77–325.

United States District Court,
M. D. Pennsylvania.

Feb. 9, 1978.

Frank Fitzpatrick, pro se.

John M. Humphrey, Williamsport, Pa., for plaintiff.

Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

Fitzpatrick has filed this action pursuant to 28 U.S.C. § 2241 alleging that Respondents' failure to afford him a hearing within a reasonable time after his arrest pursuant to a parole violator's warrant violated his constitutional rights. On January 11, 1978, following a hearing held before United States Magistrate Havas and his submission of recommended findings of fact and conclusions of law, this Court held that Fitzpatrick was arrested on June 11, 1974 pursuant to a parole violator's warrant and that the parole commission's failure to hold a revocation hearing until December 15, 1976 violated the requirement of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) that such a hearing be held within a reasonable time after an individual is taken into custody pursuant to a violator's warrant. The Court directed Fitzpatrick and Respondents to submit briefs directed to the question of the proper remedy, if any, for the violation which occurred in this case. Both Fitzpatrick and Respondents filed a brief on January 26, 1978.

The operative facts of this case are as follows: In 1964, Fitzpatrick was sentenced by the United States District Court for the Southern District of Ohio to a 10-year sentence for interstate transportation of forged securities. He was paroled in March, 1968 and, after violating his parole, was reincarcerated in 1970. He was reparoled on January 20, 1972 and on October 18, 1973, a warrant application was issued by the United States Board of Parole (now the United States Parole Commission) which listed five charges forming the basis for an alleged violation of parole: failure to submit supervision reports, indictment on state charges of grand larceny and receiving stolen goods, failure to appear in state court and answer those charges, arrest for possession of marihuana, and failure to inform his parole officer of a change in residence. On June 11, 1974, Fitzpatrick was apprehended by federal agents and taken into custody under the parole violator's warrant. After Fitzpatrick was taken to the federal building in Cincinnati, Ohio, a teletype inquiry revealed that warrants for his arrest were outstanding in the Eastern District of Virginia and the Western District of New York. Fitzpatrick was subsequently transferred to the Eastern District of Virginia and was convicted of interstate transportation of forged securities on August 27, 1974. He received a four-year sentence. In 1976, Fitzpatrick was paroled from that sentence to the custody of the United States Parole Commission which had placed a detainer against him based upon the parole violator's warrant and on December 15, 1976, a revocation hearing was held at which time the Commission decided to revoke Fitzpatrick's parole.

At the parole revocation hearing, evidence was heard concerning six alleged violations of Fitzpatrick's parole. In addition to the five charges listed in the warrant application of October 18, 1973, the hearing examiners considered a charge relating to Fitzpatrick's conviction in the Eastern District of Virginia in 1974. The examiners found that Fitzpatrick committed the acts charged as numbers 1, 3, 5 and 6 and made no finding relative to charges Nos. 2 and 4. At the hearing, Fitzpatrick admitted that he did not submit supervision reports from June to September of 1973, that he failed to appear in state court to answer to charges of grand larceny and possession of hallucinogenic drugs and that he did not report to his parole officer that he changed his residence from Cincinnati, Ohio to Detroit, Michigan. Fitzpatrick contended that he was not guilty of the charges of which he was convicted in the Eastern District of Virginia but the hearing examiners found that he committed the offenses based upon his conviction by a jury. Fitzpatrick filed this action on April 19, 1977.

■ It is clear that *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) requires that a parole revocation hearing be held within a reasonable time of the date when the parole violator is taken into custody under the violator's warrant. This Court has held that the 2½ year delay between Fitzpatrick's arrest pursuant to the warrant and the holding of a revocation hearing violated *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The issue now before the Court is to what relief, if any, Fitzpatrick is entitled as a result of this violation.

■ In *Bryant v. Grinner*, 563 F.2d 871 (7th Cir. 1977), a situation similar to the one presented by this case was considered by the United States Court of Appeals for the Seventh Circuit. Bryant, the petitioner, was arrested pursuant to a parole revocation warrant on July 18, 1975. He was promptly afforded a preliminary hearing at which he admitted he violated the conditions of his release. A final revocation hearing was held on November 20, 1975, 125 days after the date of execution of the warrant. The Court of Appeals ruled that although the delay exceeded three months, which, prior to the Supreme Court's decision in *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) would have created an irrebuttable presumption of prejudice to the petitioner so that he would be entitled to release, following that Supreme Court decision whether a person in Bryant's situation was entitled to release was to be determined by the standards prescribed in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) which relates to violations of the Sixth Amendment guarantee to a speedy trial. The Court of Appeals for the Seventh Circuit cited its earlier decision in *United States ex rel. Sims v. Sielaff*, 563 F.2d 821 (7th Cir. 1977) in support of its holding. In *Sims*, the Petitioner's parole had been revoked pursuant to a revocation hearing that was not in compliance with the minimum due process requirements articulated in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). A second hearing was held nine months later. The district court

had ordered Sims' release because it concluded that the delay was unreasonable and in violation of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Court of Appeals reversed, stating that the implication of *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) was that prejudice should not be presumed from a pre-hearing delay in excess of three months. *Moody* held that the issuance of a parole violator's warrant does not implicate any liberty interest of the parolee so that he is not entitled to a revocation hearing until he is taken into custody pursuant to the warrant. The Court of Appeals noted that *Moody* contemplates a situation where a violator's warrant is issued alleging certain acts which contravene the conditions of the parolee's release followed by a hearing only after the warrant is executed, which could conceivably involve a delay of 10 or 20 years between the commission of the acts and the hearing. Any rule which presumes prejudice automatically from a delay in excess of three months would make the holding in *Moody* an exercise in semantics, the Court of Appeals noted, because as soon as the warrant was executed, an aggrieved party would be entitled to claim prejudice and any such warrants executed more than three months after issuance would have no practical effect. Therefore, the Court concluded that a petitioner in the position of Fitzpatrick in this case is entitled to release only if he can make a showing which would entitle a criminal defendant to have charges against him dismissed because his right to a speedy trial had been violated. The factors relating to speedy trial violations, set forth by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) are the length of the delay between the levelling of charges and the hearing, the reason for the delay, the accused's assertion of his rights, and any prejudice which results to him. *See United States ex rel. Sims v. Sielaff*, 563 F.2d 821, 827–28 (7th Cir. 1977). This Court is persuaded by the reasoning of the Court of Appeals for the Seventh Circuit and holds that where

an unreasonable delay exists between the execution of a parole violator's warrant and the holding of the revocation hearing, the four factors set forth above must be considered in determining whether a petitioner such as Fitzpatrick is entitled to his release.

Applying those factors to the instant case, the Court is of the view that the length of the delay, 2½ years, weighs most heavily against the Respondents. However, such a long delay is not determinative. The reason for the delay appears to be the parole commission's good faith belief that the parole violator's warrant was not executed when Fitzpatrick was arrested on June 11, 1974. The warrant was returned to the Commission as unexecuted and the Court is convinced that at least until the filing of Fitzpatrick's petition on April 19, 1977 the Commission had no reason to suspect that Fitzpatrick had not been arrested on June 11, 1974 pursuant to warrants issued in the Eastern District of Virginia and the Western District of New York. Fitzpatrick, on the other hand, was aware of the facts surrounding his arrest which took place on June 11, 1974. He did not assert his rights until he filed this petition almost three years following his arrest so that he "sat on" his rights for a period of time. The fourth and possibly most important factor to be considered is whether Fitzpatrick was prejudiced by the delay. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Court noted that two facts are usually in dispute at a parole revocation hearing: whether the act or acts constituting a violation of the conditions of release had been committed and whether revocation is justified. In Moody's situation, the basis for the parole revocation was a conviction on criminal charges while Moody was on parole so that the only fact left to be determined was whether revocation was a proper course of action. The Supreme Court noted that a delay during which a petitioner such as Moody is incarcerated actually works to his benefit because the hearing examiners making a decision as to whether revocation is appropriate can review the petitioner's institutional adjustment record during the period of the delay.

This case is similar to *Moody* in that one of the four reasons the hearing examiners gave for revoking Fitzpatrick's parole was that he had been convicted of interstate transportation of forged securities by the Eastern District of Virginia while on parole. However, Fitzpatrick contends that his parole should not have been revoked on the basis of his criminal conviction because that parole violation was not charged in the original warrant application or any amendment thereto. A review of all the records on file in this case reveals that Fitzpatrick's contention is uncontradicted. The Court agrees that the parole commission's revocation of Fitzpatrick's parole on the basis of his intervening conviction on criminal charges was invalid. However, the Commission found that Fitzpatrick committed three other violations of his parole and the revocation was based upon those violations as well. The Court's inquiry, then, is limited to the question of whether any prejudice on those three charges resulted to Fitzpatrick by reason of the 2½ year delay.

At the revocation hearing which was held on December 15, 1976, Fitzpatrick admitted each of the three charges which established the basis for a finding that he had violated the terms of his parole. The Court believes that this situation is analogous to the situation where the fact of parole violation is not in dispute. The United States Court of Appeals for the Seventh Circuit in *Bryant v. Grinner*, 563 F.2d 871, 872 (7th Cir. 1977) held that a petitioner's admission that he had violated the conditions of his parole negates a finding that prejudice occurred from a delay in holding the revocation hearing. *See also Williams v. United States Board of Parole*, No. 77-510 (M.D. Pa. August 17, 1977). Therefore, the only disputed question at the revocation hearing was whether parole revocation was indicated. The Parole Commission could properly take cognizance of the fact that Fitzpatrick was convicted of a criminal offense while on parole in order to determine that Fitzpatrick's parole should be revoked even though it could not permissibly have

used that conviction to establish a violation of the conditions of parole because no amended notice stating the Commission's intention so to use the conviction was supplied to Fitzpatrick. The Commission was able to consider Fitzpatrick's institutional record which he compiled during the 2½ year delay. The delay could only have worked in Fitzpatrick's favor because it gave him a greater opportunity to compile a favorable institutional adjustment record. The Court finds that although the delay between Fitzpatrick's arrest pursuant to a parole violator's warrant and his revocation hearing was unreasonably long, the delay was not caused by Respondents' desire to prejudice Fitzpatrick's presentation of his case against revocation, Fitzpatrick bears at least some of the responsibility for the delay in that he failed to assert his rights promptly, and no prejudice resulted to Fitzpatrick as a result of the delay. Therefore, he is not entitled to release.

■ Fitzpatrick's brief filed on January 26, 1978 makes one additional contention not previously considered by the Court. Former 18 U.S.C. § 4205 which was in effect at the time Fitzpatrick was arrested and taken into custody pursuant to the violator's warrant states that the unexpired term of imprisonment of any such violator shall begin to run from the date he is returned to the custody of the attorney general under the violator's warrant. Because this Court has determined that the date Fitzpatrick was taken into custody under the violator's warrant was June 11, 1974, Fitzpatrick asserts that any time which he has served since that date must be credited on his unexpired term of imprisonment. The Court is of the view that this contention is correct and, although it will deny Fitzpatrick's request to be released from imprisonment, it will order Respondents to credit him with the number of days which Fitzpatrick has served in prison between June 11, 1974 and the date on which he was paroled to the custody of the detaining authority.

An appropriate order will be entered.