482 A.2d 1128

**COMMONWEALTH of Pennsylvania**

v.

**David KAVANAUGH, a/k/a Larry Paine, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 12, 1983.

Filed Oct. 12, 1984.

152

Douglas H. Johnson, Public Defender, Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, President Judge, and WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from an order of the Court of Common Pleas of Montgomery County revoking the order placing the appellant on probation and reimposing sentence.

On January 26, 1981, the appellant pled guilty to charges of theft of movable property,[1] theft by receiving stolen property,[2] and criminal attempt.[3] He was sentenced to pay a fine of twenty-five hundred dollars ($2,500.00), pay one-fifth of the cost of prosecution, and undergo state imprisonment on the theft charges for not less than two and one-half (2½) years nor more than five (5) years; on the attempt charge, he was sentenced to state imprisonment for not less than two and one-half (2½) years nor more than five (5) years. However, the court suspended both sentences and, in lieu thereof, placed the appellant on two (2) consecutive five (5) year periods of probation subject to the condition that he pay the aforementioned costs of prosecution and fine as well as proportional restitution.

1. 18 Pa.C.S. § 3921.
2. *Id.* § 3925.
3. *Id.* § 901.

On November 29, 1981, the appellant was arrested by the Philadelphia Police and charged with violating the Controlled Substance, Drug, Device and Cosmetics Act.[4] Thereafter, on December 8, 1981, the appellant reported to his probation officer, at which time he was placed under arrest for violating his probation and was given a copy of the violations of probation charged against him by his probation officer.

On January 19, 1982, the appellant appeared in court for a Gagnon I hearing to determine whether there was probable cause to believe that he committed a violation of his probation. The lower court, after hearing the testimony of state probation officer, Earl M. Pinkett, found that the Commonwealth had made out a case for Gagnon I purposes and scheduled a Gagnon II hearing. On March 15, 1982, a Gagnon II hearing was held to determine whether the appellant substantially violated the conditions of his probation and also whether or not his probation should be revoked. After hearing the testimony of Mr. Pinkett, and of the appellant, the lower court found the appellant "in violation of [his] probationary sentence," revoked his probation and sentenced him to one and one half (1½) years to five (5) years state imprisonment to date from December 8, 1981. The lower court subsequently denied, without a hearing, appellant's timely motion to modify sentence. This appeal followed.

The appellant raises the following issues:

(I) Did the lower court err in admitting, over objection, hearsay evidence at appellant's Gagnon hearings?

(II) Did the lower court err by failing to articulate on the record the reasons for appellant's sentence?

(III) Was the sentence imposed by the lower harsh and manifestly excessive under the circumstances?

Inspection of the record in this case discloses that only the first issue has merit. Consequently, we shall limit our

4. Act of April 14, 1972, P.L. 233, No. 64, § 1, 35 P.S. § 780–101, *et seq.*

discussion to that issue. The lower court's disposition of the remaining issues is sufficient.

The appellant contends that before any hearsay evidence may be admitted at any Gagnon type hearing, the presiding judge must make a specific finding that there is good cause for depriving the defendant of his due process right to confront and cross-examine witnesses. Appellant's brief at 5. The appellant further contends that at both Gagnon hearings the lower court improperly admitted over objection certain hearsay evidence without making a specific finding of good cause for not allowing confrontation. Appellant's brief at 5–6. Appellant concludes that if all hearsay evidence so admitted is not considered, the only evidence remaining is the appellant's alleged admission, which appellant contends may not by itself establish the *corpus delicti*, and therefore appellant's probation cannot be revoked. Appellant's brief at 7.

The United States Supreme Court recognized in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) that although revocation of probation like revocation of parole is not a stage of criminal prosecution, it does entail a loss of liberty which requires that a probationer be afforded certain minimal due process safeguards. The probationer is entitled to two hearings: (1) a preliminary hearing to determine whether there is probable cause to believe that he has committed a violation of his probation, and (2) a more comprehensive hearing prior to making the final revocation decision. *Gagnon v. Scarpelli, supra; Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *See Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975). These hearings are to comport with the following requirements:

> At the preliminary hearing [Gagnon I], a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing. *Morrissey v. Brewer*,

*supra,* at 487 [92 S.Ct. at 2603], 33 L.Ed.2d 484. The final hearing [Gagnon II] is a less summary one ... but the "minimum requirements of due process" include very similar elements:

"(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." *Morrissey v. Brewer,* supra, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d 484.

*Gagnon v. Scarpelli, supra,* 411 U.S. at 786, 93 S.Ct. at 1761.

■ The conditional right to confront adverse witnesses, afforded in a Gagnon I hearing is not the same as the right to confront adverse witnesses afforded in a Gagnon II hearing. In the former, the hearing officer need not specifically find good cause for not allowing confrontation. In the latter, although it is not such a highly formal procedure that it must be conducted in accordance with the entire gamut of evidentiary and procedural rules employed in a criminal trial, *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); *Commonwealth v. Holmes,* 268 Pa.Super. 396, 408 A.2d 846 (1979); *Commonwealth v. Rossetti,* 255 Pa.Super. 524, 388 A.2d 1090 (1978); the hearing officer is required to make a finding that there is good cause for not allowing confrontation before hearsay evidence may be admitted, *Morrissey v. Brewer, supra; Commonwealth v. Rossetti, supra; Commonwealth v. Davis, supra.*

By way of illustration, in *Commonwealth v. Davis, supra,* 234 Pa.Superior Ct. at 45, 336 A.2d at 624, where a

single hearing was held, this court, in determining whether that hearing represented a Gagnon I or Gagnon II hearing, maintained the hearing in question did not represent a Gagnon II hearing because it did not satisfy the requirement that "the hearing officer specifically find[ ] good cause for not allowing confrontation" before the right to confront and cross-examine adverse witnesses may be abridged. This court further maintained that the hearing in question did represent a Gagnon I hearing because the testimony presented did give the hearing officer probable cause to find that the appellant therein had violated his probation. With this distinction in mind, we shall now examine separately the hearings in the case *sub judice* to determine whether the lower court erred in allowing certain testimony to be admitted into evidence over the objection of defense counsel.

### Gagnon I Hearing

■ The sole witness presented at the Gagnon I hearing, appellant's probation officer Earl M. Pinkett, testified for the Commonwealth. On direct examination Mr. Pinkett identified the Commonwealth's exhibit C–1 as a copy of the charge which he had placed against the appellant, and indicated that appellant's signature was affixed thereto. This document stated in pertinent part:

> You are charged with the following violation(s) of your special probation/parole:
>
> Rule # 5–A: Abstain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of the Controlled Substance Drug Device and Cosmetic Act, without a valid prescription.
>
> New Criminal Charges: On 11/29/81 you were arrested by the Philadelphia Police and charged with, K/I Poss. [knowing or intentional possession] of Controlled Sub., Man. W/I [manufacture with intent to deliver].

Commonwealth Exhibit C–1. Mr. Pinkett later testified that on "December the 8th, 1981, the defendant reported to the district office, at which time he was placed under arrest

158

and given a copy of the [charges.]" N.T. January 19, 1982, p. 4. He further testified that "the technical violation stemmed from the arrest of . . . November the 29th of '81." N.T. January 19, 1982, p. 4.

The following is in pertinent part what transpired at the hearing when defense counsel raised his sole objection to the testimony of Mr. Pinkett:

[By MR. IACOVITTI, for the Commonwealth]

Q. What was the suspected drug?

A. According to the information received—

MR. LANDIS: I'm going to object . . . . to hearsay . . . .

MR. IACOVITTI: . . . this is a Gagnon I . . . hearsay is permissible.

THE COURT: That's correct. Objection overruled.

A. According to the information received on the arrest of November the 19th, 1981, the defendant was charged with knowingly and being in possession of a controlled substance with intent to deliver, delivery of a controlled substance, and he also admitted to this charge to me on December the 8th, 1981.

N.T. January 19, 1982, p. 5.

On cross-examination by defense counsel, Mr. Pinkett reaffirmed his earlier testimony that appellant had admitted to him that he had possession of a controlled substance when the police arrested him. N.T. January 19, 1982, p. 6. Moreover, Mr. Pinkett testified that appellant "told me that he had speed in his possession." N.T. January 19, 1982, p. 6. After cross-examination, the notice of violation signed by appellant (Commonwealth exhibit C–1) was admitted into evidence without objection.

The testimony adduced at the Gagnon I hearing was more than sufficient to give the court the probable cause to find that appellant committed violations of his probation. In view of the requirements set forth in *Gagnon v. Scarpelli, supra,* and *Morrissey v. Brewer, supra,* we hold that the lower court did not err in admitting, over defense objection,

testimony at the Gagnon I hearing as to what the suspected drug was.

*Gagnon II Hearing*

At the Gagnon II hearing, the Commonwealth's sole witness was once again state probation officer, Earl M. Pinkett. During direct examination, Mr. Pinkett identified the appellant and indicated that he had been one his probationers. Mr. Pinkett testified that "[t]he technical violation was Rule Number 5, knowingly and in possession of an alleged controlled substance." N.T. March 15, 1982, p. 3. When the prosecutor further inquired into what the alleged controlled substance was, the following transpired:

Q. Was the substance analyzed?

A. Yes it was.

   (A police report was marked for identification as Commonwealth's Exhibit Number 1.)

BY MR. SILOW:

Q. I show you what is marked Commonwealth's exhibit Number 1 and ask you if you can identify it.

A. Yes. This is the police report received by the agency.

Q. Does it indicate what the substance was analyzed as?

A. Analyzed—

   MR. CICCITTO: I am going to object as hearsay. There is no certification that this is a correct copy of the police record. The lab technician is not going to appear here to testify.

   THE COURT: Your objection is noted and overruled.

   MR. CICCITTO: Thank you, Your Honor.

BY MR. SILOW:

Q. Please continue.

A. It indicates that one plastic packet contained one hundred eight milligrams of a white powder which contained methamphetamine and a magnesium salt. Methamphetamine is a controlled substance, Schedule 2.

Q. That is signed by the chemist, is that correct?

A. Yes.

MR. SILOW: I move the admission of C–1.

THE COURT: It is admitted.

MR. CICCITTO: I want to reserve my objection.

THE COURT: You are granted an exception.

N.T. March 15, 1982, p. 3–4.

Mr. Pinkett further testified that the appellant "was arrested on November 29th by the Philadelphia Police." N.T. March 15, 1982, p. 5. When Mr. Pinkett was subsequently asked if he had discussed the charges with the appellant, he stated that "[the appellant] admitted to me on December 8th that he sold these alleged drugs to the arresting officer." N.T. March 15, 1982, p. 6.

On cross-examination, defense counsel elicited that Mr. Pinkett: did not witness any of the events relating to appellant's arrest on the drug charges; knew nothing with regard to the drugs themselves; had no idea of the "chain of custody" from the time the drugs were seized by police to the time they were analyzed by a chemist; had no independent basis for the crime itself; knew only that a prima facie case had been established against the appellant on the underlying charges and that there had not yet been a disposition in the Common Pleas Court.

At the conclusion of the Commonwealth's evidence, the appellant made a demurrer to the evidence, which the lower court overruled. Thereafter, the defense did not put on any evidence as to the violation of probation itself, but the appellant did take the stand after the hearing judge indicated that he would sentence "today". Appellant's testimony related to the efforts he made to improve himself by way of going to school, trying to find employment, and trying to get into a drug treatment program. Appellant testified that he had been taking drugs for about a year and that all of his arrests "have been basically ... to get money to support ... [his] drug habit." N.T. March 15, 1982, pp. 13–14. He also indicated that he had been accepted into a residential (in-patient) drug treatment program at the North Philadelphia Community Center conditioned on a stipulation

by the Parole Board and Probation Department. On cross-examination of the appellant, it was brought out that his criminal record dates back approximately seven (7) years to 1975, well before he started having problems with drugs.

Based on all the evidence present at this hearing, the lower court found appellant to be in violation of his probationary sentence.

■ The appellant now contends the police report indicating that the substance confiscated from the appellant was methamphetamine, (Commonwealth's Exhibit Number 1) and the testimony of Mr. Pinkett regarding the contents of said report were hearsay. To support this contention, appellant argues that Mr. Pinkett had no personal knowledge of what the drugs were, nor had he participated in preparing the report, and moreover, the copy of aforesaid report was not certified. Appellant also points out that the hearing judge merely "noted" defense counsel's objection and overruled it without further comment. We agree with appellant that the report and Mr. Pinkett's testimony concerning it were hearsay and our review of the record indicates that the hearing judge never did make a specific finding of good cause for admitting this hearsay evidence and concomitantly not allowing confrontation. Therefore, in view of the requirements enunciated in *Gagnon v. Scarpelli, supra,* and *Morrissey v. Brewer, supra,* we hold the lower court did err in admitting hearsay evidence at the Gagnon II hearing without making a specific finding of good cause for not allowing confrontation.

However, the lower court's error in this regard was harmless because there was no prejudice to the appellant. The lower court had before it sufficient evidence independent of the hearsay to find by a preponderance of the evidence that the appellant had violated his probationary sentence. Specifically, the uncontradicted testimony of appellant's probation officer that appellant admitted to him that he sold the drugs to the arresting officer and that appellant had been arrested on November 29, 1981, was

162

sufficient to show appellant was more likely than not in violation of his probationary sentence.

Anticipating such a holding, the appellant argues in the alternative that *even if* the lower court did not consider the improperly admitted hearsay evidence, the only evidence remaining to be considered is his admission, which by itself may not establish the *corpus delicti.* In support of this argument, the appellant relies on *Commonwealth v. Brusky,* 219 Pa.Super. 54, 280 A.2d 826 (1971).

There is absolutely no merit to appellant's argument concerning the applicability of the *corpus delicti* rule to Gagnon proceedings. The *corpus delicti* rule is not applicable outside of criminal prosecutions. As hereinbefore stated, revocation of probation is not a stage of criminal prosecution, but arises after the end of the criminal prosecution. *Gagnon v. Scarpelli, supra,* 411 U.S. at 781, 93 S.Ct. at 1759. Hence, the *corpus delicti* rule is not applicable here.

The Judgment of Sentence is affirmed.